[Crim. No. 8473.   Second Dist., Div. Four.   Mar. 4, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. HILTON ADDRIAN CROSSLEY, Defendant and Appellant.

Elinor Chandler for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

BURKE, P. J.—Defendant was charged in an information filed by the District Attorney of Los Angeles County with grand theft in violation of Penal Code section 487. It was alleged that on or about January 18, 1962, defendant took four Zenith television sets, having a total value of $760, from Sues, Young & Brown, Inc., a Zenith wholesale distributor. Defendant pleaded not guilty. After trial by jury defendant was found guilty as charged. A motion for new trial was denied as was probation. Defendant was sentenced to state prison for the term prescribed by law. This appeal followed.

Sues, Young & Brown, Inc., distributes television sets to retailers. John Kenmuir, an employee, testified he observed defendant coming out of the employees' exit carrying two portable television sets, one of which was gray in color, the other tan, at about 12:30 p.m. on January 18, 1962. Defendant walked over to a late model Pontiac automobile, license number TVV-181, opened the trunk, put the sets inside and drove away. Kenmuir made a note of the license number since it was unusual for anyone to be picking up television sets during the lunch hour. He turned this number in to the front office.

Arthur Meek, also an employee of the company, had a physical inventory taken of the display room that afternoon and it revealed that a total of four sets was missing. Two of the missing sets were portable models, one gray and one tan. The total value of the missing sets was $766.74.

Robert Phillips, a City of Los Angeles Police Officer, placed a late model Pontiac with license number TVV-181 under observation on the evening of January 26. When defendant approached the car and entered it the officer arrested him.

Kenmuir identified defendant as the man he had seen leaving the store with the television sets on January 18.

Loren Waggoner, one of the investigating officers in the case, determined through the Department of Motor Vehicles that the car in question was registered to a Carletta Smith. Defendant acknowledged to Officer Waggoner that he had been the only one driving the car in question during the two weeks prior to his arrest.

On defendant's behalf Mrs. Hazel Wilcoxson, defendant's sister, testified that defendant had arrived at her residence in Riverside, California, on the morning of January 18 and remained in her home continuously until he went shopping around noon. He was gone for an hour or so, returning at about 1:30 p. m. with purchases he had made. He stayed at her home in Riverside that night and she returned to Los Angeles with defendant the next morning.

Tyree Ellison, a Probation Officer for the County of Riverside, testified he had known defendant for some period of time; that he was fairly certain it was on January 18 at around 1:30 in the afternoon that he had seen and said hello to defendant in Riverside. Ellison testified that while stopped in his car at a traffic light he saw and called out to defendant who was standing next to a car in a gas station. He noticed the graying of defendant's hair. Defendant waved back to him.

Defendant took the stand in his own defense. He testified that on January 18 he had in his possession a Pontiac automobile answering the description of the one allegedly seen at the place of the theft; that on the 18th he had gone to visit his sister in Riverside; that he had seen Tyree Ellison in Riverside when he had gone out shopping for his sister, and that he had returned to Los Angeles the next day to purchase an automobile. He stated that the Pontiac car was registered to a Carletta Smith who lives on West Boulevard at Adams in Los Angeles. He further testified he had never been inside Sues, Young & Brown, nor did he know anything about the display room inside it. He denied having taken any television sets.

Thereafter the following occurred at the trial:

"Q. [By Mr. Ross, defense counsel at the trial.] Have you ever been convicted of a felony?

"Mr. Crossman [deputy district attorney]: Just a minute.

"The Witness: Yes, I have.

"Mr. Ross: Q. How long ago was that?

"A. Seven years.

"Mr. Ross: I'll withdraw my last question, your Honor, if counsel objects.

"Mr. Crossman: May we approach the bench on that, your Honor?

"The Court: Yes, approach the bench.

"(Whereupon, the following proceedings were had between the Court and Counsel at the bench, outside the hearing of the jury.)

"Mr. Crossman: Maybe counsel is aware of something I am not aware of, but to my knowledge the man has not been convicted of a felony. He has not had any State Prison sentence and does not have any felony sentence. If you are going to ask him, then I will ask him what, when and where, and so forth.

"Mr. Ross: This is all in the police report.

"Mr. Crossman: We don't have any.

"Mr. Ross: That is all the officers ever talk about.

"Mr. Crossman: There has been no mention of it in the People's case.

"Mr. Ross: It is all in the report.

"Mr. Crossman: I will check my report.

"Mr. Ross: They talked to me about it. I was not trying to hide anything.

"Mr. Crossman: All right.

"The Court: There is nothing pending before the Court. Is there an objection pending?

"Mr. Crossman: My objection would be he was impeaching his own witness.

"Mr. Ross: It isn't any impeachment, your Honor; is [sic] is stating a fact. It is just a matter of bringing in all the evidence before the Court.

"Mr. Crossman: I will submit it.

"The Court: What is the state of the record? May we have the last two questions and answers?

"(The record was read by the reporter.)

"Mr. Crossman: Well, maybe my objection wasn't timely, but I object to the question wherein counsel asks his witness if he had been convicted of a felony.

"Mr. Ross: On what basis?

"Mr. Crossman: Impeaching your own witness.

"Mr. Ross: I don't think there is any logic behind that, if the Court please, I am not impeaching my witness, I simply asked if it is a fact.

"Mr. Crossman: It may not be logic, but there is case law behind it.

"Mr. Ross: The law doesn't state if a man is convicted of a felony he is to be disbelieved in every instance.

"The Court: A motion to strike will be granted, the objec-

tion will be sustained. I am going to instruct the jury to disregard the last two questions and answers.

"(Whereupon, the following proceedings were had in open court within the hearing and presence of the jury.)

"The Court: Ladies and gentlemen of the jury, the Court has sustained the objections to the last two questions, and the Court has also granted a motion to strike the last two answers. You are instructed to disregard the last two questions and answers relating to the felony."

After conclusion of the trial a substitution of attorneys was effected. Defendant thereafter moved for a new trial, claiming newly discovered evidence. At that time defendant sought to put on evidence to impeach the testimony of John Kenmuir, the witness who identified defendant. The court sustained the People's objection to such evidence.

Thereafter defendant requested the court to issue a bench warrant to obtain the appearance in court of Carletta Smith, a subpoenaed witness (the registered owner of the car in defendant's possession on January 18). Defendant asserted that police officers testified at the trial that Carletta Smith could not be reached; that defendant's trial counsel acquiesced in this and did not make an independent investigation; that in fact she was at her known residence at all times before the trial and was available and could have testified at the trial to defendant's substantial benefit. The court denied the request and denied the motion for a new trial.

Defendant appeals from the judgment of conviction and purports to appeal from the denial of the motion for new trial. Defendant contends:

(1) The evidence is insufficient to support the verdict.

(2) Defense counsel impeached his own witness improperly.

(3) Motion for new trial was improperly denied.

(4) The trial court erred in not issuing a bench warrant for a subpoenaed witness on the motion for a new trial.

As a basis for the argument that the evidence is insufficient defendant contends that the testimony of the identifying witness, John Kenmuir, was not adequate identification to establish defendant's guilt. This was a matter for the trier of fact. (*People* v. *Ambrose,* 155 Cal.App.2d 513, 520 [318 P.2d 181]; *People* v. *Kittrelle,* 102 Cal.App.2d 149, 154 [227 P.2d 38].) In the instant case we have the direct positive testimony of Kenmuir that he saw defendant leaving the store with two television sets and that defendant drove away in a car bearing the license number TYV-181 of the

very car defendant admitted having in his possession on the date of the theft.

It is also argued by defendant that the prosecuting attorney committed prejudicial misconduct in eliciting testimony from the witness Kenmuir on redirect examination that he was at one time on the police force in Indiana. This act, it is asserted, caused the jury to assign unwarranted weight to Kenmuir's identification of defendant by considering the witness as a man of special ability in identifying persons. The prosecutor made no reference to this matter on direct. Defense counsel on cross-examination of the witness minutely went into the subject of the witness' opportunity to see defendant, to observe the television sets in his arms and to observe and record the license number of the car. He questioned him as to his vision, whether he wore glasses, his age and what obstructions, if any, might have obscured his vision. It was following this cross-examination that the prosecutor asked the witness if he had had "any training in the observation of things and making reports from what [he] observed?" He answered affirmatively; that he used to be on the police force in the State of Indiana. No objection was voiced to these questions and no opportunity was given the trial judge to rule on their admissibility.

At the time of the hearing on the motion for a new trial Kenmuir testified that he had been a patrolman for eight months and that his investigative training consisted of serving with a seasoned officer. The fact that the prosecuting attorney did not bring out at the trial the length of Kenmuir's service as a patrolman or the nature of his training is not a basis for a charge of prejudicial misconduct. Furthermore, it is noteworthy that any claimed misconduct could have been cured by an admonition to the jury upon objection by defendant's counsel, but there was no objection and consequently it cannot be complained of on appeal. (*People* v. *Love*, 56 Cal.2d 720, 732 [16 Cal.Rptr. 777, 17 Cal.Rptr. 481, 366 P.2d 33, 809].)

Defendant contends that he was improperly impeached as a witness by his own counsel at the trial when counsel asked him on direct examination if he had ever been convicted of a felony. As previously noted in the portion of the trial transcript quoted *supra*, an objection to such question was sustained, the answers were stricken and the jury was instructed to disregard the questions and answers.

It is true that counsel cannot ordinarily impeach his

own witness unless the testimony is damaging, material, and surprising. (*People* v. *Spinosa,* 115 Cal.App.2d 659, 665 [252 P.2d 409].) However, it is also the rule that such error cannot be complained of on appeal when it was properly corrected by the trial court as it was in the instant case. (*People* v. *Mason,* 184 Cal.App.2d 317, 374-375 [7 Cal.Rptr. 627].)

As was stated in *Winchell* v. *Lorenzen,* 123 Cal.App. 2d 704 [267 P.2d 398], at page 711: "It is only in extreme cases that the court, when acting promptly and speaking clearly and directly on the subject, cannot, by instructing the jury to disregard such matters, correct the impropriety of an act of counsel and remove any effect his conduct or remarks would otherwise have. [Citation.]"

Additionally, it would seem that defendant in alleging that his trial counsel committed error is implicitly asserting that trial counsel did not adequately represent him. However, an appellant cannot claim inadequate representation by trial counsel unless a complaint was made to the trial court and the opportunity afforded the court to correct any inadequacy. If such has not been made the acts of appellant's counsel will be imputed to him. (*People* v. *Youders,* 96 Cal.App.2d 562, 569 [215 P.2d 743].)

Defendant's argument that the motion for a new trial was improperly denied is grounded upon claims that the evidence was insufficient to support the verdict (discussed above) and that there was newly discovered evidence. Applying the established rules by which a trial court should be guided on hearing a motion for a new trial on the ground of newly discovered evidence (*People* v. *Williams,* 57 Cal.2d 263, 270 [18 Cal.Rptr. 729, 368 P.2d 353]), we find that there is no basis to disturb the ruling by the trial court. There was no showing of any abuse of discretion (*People* v. *Williams, supra*), nor does it appear that a different result would have been probable on a retrial.

Upon full review of the record in this case it appears that defendant was accorded a fair trial in all respects and that there was substantial evidence to support the finding of his guilt.

The judgment is affirmed. The purported appeal from the denial of the motion for new trial is dismissed. (Pen. Code, § 1237.)

Jefferson, J., and Bishop, J. pro tem.,\* concurred.

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.